UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL MILLER and LYNNE NIKKILA,

            Plaintiffs,

vs.

PATHWAY FINANCIAL,
ASSURED CAPITAL FUNDING,
OCWEN LOAN SERVICING,
HSBC USA,
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, and
STAVALE FINANCIAL GROUP,

            Defendants.
_____/

Civil Action No.
12-cv-14387

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

## OPINION AND ORDER
### (1) GRANTING DEFENDANTS OCWEN LOAN SERVICING, HSBC, USA, AND MORTGAGE ELECTRONIC REGISTRATION SYSTEM'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6), and
### (2) GRANTING DEFENDANT STAVALE FINANCIAL'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

Plaintiffs Paul Miller and Lynne Nikkila ("Plaintiffs") filed the Complaint in this matter in Wayne County Circuit Court on September 6, 2012, and then filed a First Amended Complaint on September 27, 2012. On October 3, 2012, Defendants Ocwen Loan Servicing ("Ocwen"), HSBC USA ("HSBC"), and Mortgage Electronic Registration Systems ("MERS") removed this case to this United States District Court based on federal question jurisdiction.[1] (Dkt. No. 1.)

---

[1] At the time of removal, the other Defendants in this matter were not served, and thus Defendants Ocwen, HSBC, and MERS were not required to obtain their concurrence in the removal. *See* 28 U.S.C. § 1446(b)(2)(A) (providing that consent to removal is required from "all defendants who have been properly joined and served . . . .")

Defendants Ocwen, HSBC, and MERS filed a motion to dismiss on October 10, 2012.[2] (Dkt. No. 2.) Plaintiffs filed a response on November 13, 2012. (Dkt. No. 17.) Defendants filed a reply on December 4, 2012. (Dkt. No. 20.)

On November 2, 2012, Defendant Assured Capital Funding ("Assured") filed a Motion to Dismiss and Concurrence in Defendants Ocwen, HSBC, and MERS' Motion to Dismiss. (Dkt. No. 12.) On December 7, 2012, Plaintiffs and Defendant Assured stipulated to dismiss the claims against Defendant Assured without prejudice, and Defendant Assured withdrew its motion to dismiss without prejudice. (Dkt. No. 21.)

Stavale Financial Group ("Stavale") also filed a motion to dismiss on November 8, 2012. (Dkt. No. 15.) Plaintiffs filed a response on December 10, 2012. (Dkt. No. 22.) Defendant Stavale filed a reply on January 7, 2013. (Dkt. No. 23.)

The Court held a hearing on Defendants' motions on Wednesday, April 17, 2013.

For the reasons stated below, the Court will GRANT Defendants' motions.

## I. BACKGROUND

Plaintiffs Paul Miller and Lynne Nikkila are married. In 2004, Plaintiffs purchased property located at 18685 Milburn in Livonia, Michigan (the "Property"), in a mortgage transaction. On August 2, 2006, Plaintiffs refinanced their mortgage.[3] Plaintiffs allege that they applied for the

---

[2]The arguments in Defendants' motion to dismiss are directed to the First Amended Complaint, which was not attached to Defendants' Notice of Removal filed in this Court. Nevertheless, the Court notes that the First Amended Complaint was filed in the Wayne County Circuit Court after the original Complaint, and the Court will regard the First Amended Complaint as the operative complaint in this matter for purposes of the instant motions.

[3]The First Amended Complaint states that Plaintiffs purchased the Property in 2006 (First Am. Compl. ¶ 5), but the Uniform Residential Loan Application dated August 2, 2006, attached to the First Amended Complaint as Exhibit 2, states that the purpose of the loan is a "Refinance"

2

refinanced mortgage through Defendant Assured, and that the approval and funding for the refinanced mortgage came from Defendant Pathway Financial, LLC ("Pathway").[4] (First Am. Compl. ¶¶ 6, 7.) Plaintiffs also allege that Defendant Ocwen is the current loan servicer for their mortgage, that Defendant HSBC is the current owner of the note secured by Plaintiffs' mortgage loan, and that Defendant MERS is the current mortgagee. (*Id.* ¶¶ 8, 9.) Plaintiffs assert that Defendant Stavale was affiliated with Defendant Assured at the time Plaintiffs obtained their mortgage refinance loan. (*Id.* ¶ 11.)

Plaintiffs claim that their mortgage broker was paid a "yield spread premium" as part of the mortgage refinance, which "is an amount paid to a closing mortgage broker for selling either higher risk mortgages, or for selling mortgages at a higher interest rate than the buyer qualifies for." (First Am. Compl. ¶¶ 14, 15.) Plaintiffs also claim that their income was inflated by approximately $1,700, and that their home was appraised for a value higher than a comparable sale – $185,000 – in order to qualify them for the mortgage refinance terms. (*Id.* at ¶¶ 16-18.)

The August 2, 2006 refinance was accomplished through two mortgage loans. The first mortgage loan was for $37,000 and included a Balloon Rider. (First Am. Compl., Ex. 1, $37,000 Mortgage Agreement at 1, 6.) The Balloon Rider stated that the $37,000 amount included an interest rate of 10.375 percent. (*Id.*, Note with Balloon Payment at 1.)

---

rather than a "Purchase." (First Am. Compl., Ex. 2, Loan App. 1.) Plaintiffs admit in their Response in Opposition to Ocwen, HSBC, and MERS Motion to Dismiss that they purchased the Property in 2004 and refinanced their mortgage in 2006. (Pls.' Resp. to Defs. Ocwen, HSBC, and MERS' Mot. to Dismiss at 7-8.)

[4]Defendant Pathway. has not filed an appearance or any pleadings in this matter. However, Plaintiffs have not sought an entry of default as to Defendant Pathway. The record is unclear as to whether Defendant Pathway has been served with any complaint and/or summons in this matter.

The Loan Application for the $37,000 mortgage stated that loan type was a "15YR BALLOON." (First Am. Compl., Ex. 2, Loan Application 1.) This conflicts with the allegation in paragraph 13 of the First Amended Complaint, which states that Plaintiffs applied for a "fixed loan." (First Am. Compl. ¶ 13.) The Loan Application also reflects a 10.375 percent interest rate for the $37,000 mortgage. (Loan Application 1.) Plaintiff Lynne Nikkila's income is stated as $4,700 per month in the Loan Application. (*Id.* at 2.) No information is provided as to Plaintiff Lynne Nikkila's husband, Plaintiff Paul Miller.

The second mortgage loan that comprised Plaintiffs' August 2, 2006 refinance was for $148,000. The First Amended Complaint does not contain the mortgage agreement or loan application for this mortgage loan. However, Defendants Ocwen, HSBC, and MERS have attached the $148,000 mortgage agreement to their motion to dismiss.[5] (Defs. Ocwen, HSBC, and MERS' Mot. to Dismiss, Ex. 2, $148,000 Mortgage Agreement.) The $148,000 Mortgage Agreement included an Adjustable Rate Rider, which stated that "[t]he Note provides for an initial interest rate of 8.490%[,]" and that "[t]he interest rate . . . may change on the first day of AUGUST, 2008 and on that day every 6TH month thereafter." (*Id*, Adjustable Rate Rider at 1.) The $148,000 Mortgage Agreement also included an addendum providing that "the interest rate during the term of this loan will never be less than 8.490%, which is called the 'floor rate', over the life of the loan." (*Id.*, Addendum to Adjustable Rate Rider at 1.) An additional addendum provided for an interest-only payment period on the mortgage loan. (*Id.*, Interest Only Addendum to Adjustable Rate Rider at 1.)

---

[5]Although it was not attached as an exhibit to the First Amended Complaint, the Court will consider the $148,000 mortgage agreement on Defendants' motion to dismiss because it is an "item[] appearing in the record of the case, . . . [and is] referred to in the Complaint and [is] central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

4

The Adjustable Rate Ride and attached Addendums, which are signed by Plaintiffs, conflict with Plaintiffs' allegation that they applied for a "fixed loan." (First Am. Compl. ¶ 13.)

The Department of Housing and Urban Development Settlement Statement, attached to the First Amended Complaint, shows that the August 2, 2006 refinance not only paid Plaintiffs' prior mortgage and debts, but also resulted in a $9,750.56 cash payment to Plaintiffs. (First Am. Compl., Ex. 3, HUD Settlement Statement.)

Plaintiffs admit that they had "concerns" about the new mortgages during the 2006 refinance. (Pls.' Br. in Resp. to Defs.' Ocwen, HSBC, and MERS' Mot. to Dismiss at 9.) Nevertheless, Plaintiffs did not file the original Complaint in this matter until September 6, 2012.

Now before the Court are Defendants' motions to dismiss.

## II. STANDARD OF REVIEW

At the pleading stage, the plaintiff need only show "a plausible, not probable, entitlement to relief." *Erie County, Ohio v. Morton Salt, Inc.*, 702 F.3d 860, 868 (6th Cir. 2012). Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must view "all well-pleaded material allegations of the pleadings of the opposing party . . . as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (citation omitted). However, the Court need not accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Ultimately, the Court must determine whether the facts alleged in the complaint "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

## III. ANALYSIS

Plaintiffs allege that they are victims of Defendants' predatory lending practices. The First Amended Complaint alleges seven counts: Fraud and Misrepresentation (Count I); Common Law Rescission and/or Reformation (Count II); Quiet Title (Count III); Breach of Fiduciary Duty (Count II);[6] Violation of the Federal Truth in Lending Act ("TILA") and Federal Reserve Regulation Z (Count IV); Credit Repair Organizations Act ("CROA") (Count V); and Michigan Mortgage Brokers, Lenders, and Servicers Act ("MMBLSA") (Count VI).

In both motions to dismiss currently before the Court, Defendants Ocwen, HSBC, MERS, and Stavale argue that Plaintiffs' claims are barred by the applicable statute of limitations, and that the facts alleged in the First Amended Complaint are insufficient to state any claims against these Defendants.

### A. Statute of Limitations

There is no dispute that the mortgage refinance transaction at issue occurred on August 2, 2006, and that Plaintiffs filed the original Complaint in this matter on September 6, 2012. Accordingly, more than six years passed between the date giving rise to Plaintiffs' claims in this matter and Plaintiffs' first-filed Complaint.

The statute of limitations for fraud and misrepresentation claims in Michigan is six years. *See* Mich. Comp. Laws § 600.5813; *Boyle v. General Motors Corp.*, 468 Mich. 226, 230 n. 3 (2003) (noting that a six-year statute of limitations is applicable to fraud actions in Michigan). The statute of limitations for Plaintiffs' fraud claim thus expired on August 2, 2012 – approximately one month prior to the filing of the first Complaint.

---

[6]The First Amended Complaint contains two claims labeled "Count II."

Plaintiffs argue that the statute of limitations should be tolled because Defendants' misrepresentations were fraudulently concealed from Plaintiffs. Plaintiffs assert that:

> [i]t was not until plaintiffs began to struggle (the 5 year ARM readjustment) that they sought help in short selling their home. It was this dealing with real estate professionals that then recommended Plaintiffs' mortgage be audited. Through this audit, the information that forms the basis of the First Amended Complaint was discovered.

(Pls.' Br. in Opp. to Defs.' Ocwen, HSBC, and MERS' Mot. to Dismiss at 15.)

However, Plaintiffs cannot claim fraudulent concealment because they have not pled any affirmative act or misrepresentation by Defendants that was designed to mislead or hinder Plaintiffs from discovering the alleged fraud. *Doe v. Roman Catholic Archbishop of Archdiocese of Detroit*, 264 Mich. App. 632, 642 (2004). In other words, Plaintiffs have failed to show any actions taken by Defendants to conceal the instant cause of action that were "of an affirmative character and fraudulent." *Id.* (citation omitted).

Furthermore, the facts alleged in the First Amended Complaint were known or should have been known to Plaintiffs at the time they executed the August 2, 2006 refinance. Plaintiff Lynne Nikkila's monthly income was clearly disclosed as $4,700 on the Loan Application, along with the 10.375 percent interest rate and the disclosure that the loan was a "15 YR BALLOON" amortization loan. (First Am. Compl., Ex. 2, Loan Application.) The $148,000 Mortgage Agreement disclosed that the interest rate could adjust up to 14.49 percent after August 2008. (Adjustable Rate Rider at 1-2.) The Court also notes that Plaintiffs' admitted in the briefing in this matter that they had "concerns regarding the [adjustable rate mortgage] during their 2006 refinance," and were "reassured 'they could refinance again in two years.'" (Pls.' Br. in Opp. to Defs. Ocwen, HSBC, and MERS' Mot. to Dismiss at 9.)

Because the facts constituting Plaintiffs' fraud/misrepresentation claim were known or should have been known to Plaintiffs on August 2, 2006, when they executed the refinance, Plaintiffs cannot claim the facts supporting their fraud and misrepresentation claims were fraudulently concealed. *Doe*, 264 Mich. App. at 644 (holding that "plaintiff has failed to allege a claim of fraudulent concealment that avoids the applicable statute of limitation because plaintiff's causes of action were not concealed from him, i.e., he knew or should have known all the essential elements of potential causes of action against defendant at the time of his injury."). Plaintiffs' fraud/misrepresentation claim is therefore barred by the statute of limitations.

Plaintiffs' equitable claims for rescission/reformation and quiet title are also subject to a six-year statute of limitations, and are thus barred. "Equity follows the analogies of the law in all cases where an analogous relief is sought upon a similar claim." *Lothian v. City of Detroit*, 414 Mich. 160, 169 (1982). Plaintiffs' claims for rescission/reformation and quiet title are based on alleged fraud that occurred on August 2, 2006, and are thus barred under the six-year statute of limitations applicable to fraud claims in Michigan.[7] *See Reynolds v. Empire Fin. Network*, No. 12-cv-14520, 2013 WL 811540, at *3 (E.D. Mich. Mar. 5, 2013) (Steeh, J.) (finding claims for rescission/reformation and quiet title were subject to a six-year statute of limitations because they were based on theories of fraud, and dismissing because the action was filed in August 2012 and "[a]ll the factual allegations supporting these claims occurred in January 2003.")

---

[7]Defendant Stavale argues that a six-year statute of limitations applies to Plaintiffs' rescission/reformation claim because it is analogous to a remedy available in contract actions. *See* Mich. Comp. Laws § 600.5807(8) (providing a six-year statute of limitations for actions to recover damages for breach of contract). However, the First Amended Complaint does not allege any claims for breach of contract, and the rescission/reformation claim is based on Defendants' alleged fraudulent conduct. Nevertheless, the Court agrees that Plaintiffs' claims are barred under a different six-year statute of limitations.

Plaintiffs rely on *Warren v. Hugo Scherer Estate*, 272 Mich. 254 (1935), in arguing that their claims for rescission/reformation of the mortgage refinance should not be barred by the statute of limitations. In *Warren*, the Michigan Supreme Court upheld the trial court's finding that plaintiff had a valid claim to rescind a real estate contract, where the defendant had misrepresented the location of the land, even though the plaintiff brought the claim seven years after he purchased the land. This case does not support Plaintiffs' claims in the instant matter, however. The Michigan Supreme Court in *Warren* specifically noted that "the remedy of rescission is a harsh one and cannot be invoked merely for the purpose of escaping what subsequently develops to have been a bad bargain[.]" *Id.* at 256. In finding that the plaintiff in that case had a valid claim for rescission, the Michigan Supreme Court relied on "[t]he general rule . . . that false representations as to the situation of land may constitute fraud which will sustain an action of deceit, or for rescinding the contract of sale, provided they are of such character and are made in such a way that the vendee has a right to rely on them." *Id.* at 257.

Plaintiffs in the instant matter do not allege that Defendants misrepresented the location or situation of the land in the mortgage refinance. The basis for their claims is the nature of the loan, which, as noted *supra*, was disclosed to Plaintiffs in the Loan Application and Mortgage Agreements. Plaintiffs' equitable claims are therefore barred by the statute of limitations.

Plaintiffs' claims under TILA and the CROA are also barred by the statute of limitations. The TILA provides that "any action under this section may be brought . . . within one year from the date of the occurrence of the violation . . . ." 15 U.S.C. § 1640(e). The CROA provides a five-year statute of limitation for "[a]ny action to enforce any liability under this subchapter . . . ." 15 U.S.C. § 1679i. Plaintiffs' claims under these sections were brought more than six years after Plaintiffs

knew or should have known of their potential claims. Accordingly, Plaintiffs' TILA and CROA claims are barred by the statute of limitations.

Plaintiffs' breach of fiduciary duty claim is also barred by the statute of limitations. A claim for breach of fiduciary duty in Michigan is subject to a three-year statute of limitations. *Miller v. Magline, Inc.*, 76 Mich. App. 284, 313 (1977). Plaintiffs' breach of fiduciary duty claim is not timely and is barred by the statute of limitations. Furthermore, Plaintiffs' MMBLSA claim is based on Defendants' alleged fraudulent conduct and will therefore also be dismissed as untimely.

## B. Sufficiency of Factual Allegations

Defendants argue that even if Plaintiffs' claims were not time-barred, they are insufficient to state a viable cause of action.

### 1. Fraud/Misrepresentation

To state a claim for fraud or misrepresentation, a plaintiff must show "(1) That defendant made a material misrepresentation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury." *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336 (1976) (citation omitted). In addition, a party asserting a fraud claim must plead with particularity the circumstances constituting fraud. *See* Fed. R. Civ. P. 9(b). "This rule requires a plaintiff: (1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 247 (6th Cir. 2012).

The First Amended Complaint alleges that "Defendant's representations, both verbal and

10

through their disclosures, up to and through closing, made material representations to plaintiffs regarding the nature of the loan and value of the property[,]" and that "[t]hese representations were false at the time, or made with reckless disregard as to their truth." (First Am. Compl. ¶ 20, 22.) Defendants argue that these allegations are too vague and conclusory to establish a claim for fraud/misrepresentation. Defendants Ocwen, HSBC, and MERS also argue that they had no involvement in the origination of Plaintiffs' 2006 loan, and thus cannot be liable for any alleged fraud that took place during the 2006 refinance. *See Chowdhury v. Aegis Mortg. Corp.*, No. 2:09-cv-11221, 2009 WL 3270090, at *4 (E.D. Mich. Oct. 9, 2009) (Murphy, J.) (dismissing fraud claims because the plaintiff's claims "relate[d] solely to the conduct of Aegis through its agents, not Countrywide. Therefore, the complaint fail[ed] to allege that Countrywide engaged in misrepresentation and therefore fail[ed] to state any claim of misrepresentation.").

In response, Plaintiffs argue that the allegations in the First Amended Complaint are sufficient.[8] Plaintiffs assert that they applied for a fixed-rate mortgage, and that Defendants misrepresented the nature of the financing. Plaintiffs also claim that Defendants misrepresented Plaintiffs' income and the appraisal value of the Property to get approval for the loans. Plaintiffs contend that these allegations are sufficient to support a claim for fraud/misrepresentation.

Plaintiffs admit that there are no allegations involving Defendants Ocwen, HSBC, or MERS, but claim that these Defendants are liable as assignees, because they are the current owners of

---

[8]Plaintiffs concede that Rule 9(b) applies in the instant matter, but complain that Defendants are trying to take advantage of "the more stringent standards for fraud under the federal rules to have plaintiffs [sic] claim dismissed with prejudice." (Pls.' Br. in Opp. to Defs. Ocwen, HSBC, and MERS' Mot. to Dismiss at 13.) The Court notes that Michigan courts follow a rule of pleading that is analogous to Federal Rule of Civil Procedure 9(b). *See* M.C.R. 2.112(B)(1) (providing that "the circumstances constituting fraud or mistake must be stated with particularity.").

11

Plaintiffs' mortgage and note, and because MERS is acting as Defendant HSBC's nominee. Plaintiffs argue that Defendants Ocwen, HSBC, and MERS must demonstrate that they acquired Plaintiffs' mortgage and note without notice of the alleged fraud. "An assignee stands in the position of the assignor, possessing the same rights and being subject to the same defenses." *Burkhardt v. Bailey*, 260 Mich. App. 636, 653 (2004); *see also Hardy v. Heide*, 291 Mich. 542, 547 (1939) (noting that "[i]t is a general rule that one acquiring title from a fraudulent grantor has the burden or proving that he paid value and took without notice of the fraud.").

Plaintiffs are correct that an assignee of a mortgage is in the same position as the assignor with respect to the contractual rights under the mortgage agreement. Plaintiffs' claims, however, are based on the pre-contractual intentional tort of fraud. Plaintiffs' fraud/misrepresentation claim is for pre-contractual conduct that is distinct from any obligations Defendants have as assignees of Plaintiffs' mortgage. "Fraud in the inducement . . . addresses a situation where the claim is that one party was tricked into contracting. It is based on pre-contractual conduct which is, under the law, a recognized tort." *Huron Tool and Engineering Co. v. Precision Consulting Services, Inc.*, 209 Mich. App. 365, 371 (1995) (citation omitted). While contractual claims transferred when Defendants took Plaintiffs' mortgage by assignment, Plaintiffs' pre-contractual tort claims against the assignor did not. Plaintiffs' fraud/misrepresentation claim against Defendants Ocwen, HSBC, and MERS will therefore be dismissed. *See Chowdhury*, 2009 WL 3270090, at *4 (dismissing fraud claims and noting that "Chowdhury cannot overcome the argument that assignee liability applies only to receipt of contractual liabilities under assignment, and since he is alleging a tort claim, he must identify a breach of a duty separate and distinct from the duty Countrywide owed him under the mortgage.").

Plaintiffs' fraud/misrepresentation claim against Defendant Stavale will also be dismissed. Even if the allegations in paragraphs 12 (stating that the mortgage closed on August 2, 2006), 16 (stating that Plaintiffs' income was inflated), 17, and 18 (stating that the appraised value of the Property was inflated), were sufficient to satisfy the particularity requirements under Rule 9(b), Plaintiffs cannot show reasonable reliance on these misrepresentations because they were clearly disclosed in the Loan Application given to and signed by Plaintiffs. "There can be no fraud where a person has the means to determine that a representation is not true." *Nieves v. Bell Indus., Inc.*, 204 Mich. App. 459, 464 (1994). Plaintiffs' fraud/misrepresentation claim thus fails. The Court notes, but does not rely on, the fact that Plaintiff Nikkila has been employed for many years as a paralegal at the Brooks Kushman P.C. law firm.

*2. Rescission/Reformation and Quiet Title*

The First Amended Complaint alleges in support of Plaintiffs' rescission/reformation claim that, because of Defendants' misrepresentation, "Plaintiffs have no adequate remedy at law to restore the parties to the status quo other than a rescission or cancellation of the mortgage and note . . . ." (First Am. Compl. ¶ 31.) Regarding Plaintiffs' quiet title claim, the First Amended Complaint alleges that "[a]llowing defendants to continue to profit from their fraudulent acts would be unjust, and since plaintiffs have no adequate remedy at law, an equitable remedy is proper."

The allegations in the First Amended Complaint cannot support a claim for fraud/misrepresentation. Because Plaintiffs' fraud/misrepresentation claim serves as the basis for their rescission/reformation and quiet title claims, these claims will also be dismissed.

*3. Breach of Fiduciary Duty*

Plaintiffs' breach of fiduciary duty claim is only brought against Defendants Pathway,

13

Assured, and Stavale. Plaintiffs allege that they "reposed faith, confidence, and trust in defendants Pathway, Assured Capital Funding and Stavale Financial, as professionals hired to help plaintiffs refinance their home." (First Am. Compl. ¶ 38.) Plaintiffs further allege that these Defendants "betrayed that reliance by ordering, generating, and using an inflated appraisal." (*Id.* at ¶ 40.)

The First Amended Complaint alleges that Defendant Stavale was involved in "brokering the loan." (*Id.* at ¶ 11.) The Loan Application also shows that Dave Stavale was the "interviewer" for Plaintiffs' loan, and that he was acting as Defendant Assured's agent at the time. (Loan Application at 4.) However, even if Dave Stavale interviewed Plaintiffs for their loan on behalf of Defendant Assured, this does not establish a fiduciary relationship between Defendant Stavale Financial Group and Plaintiffs.

Plaintiffs have not alleged any facts to support the legal conclusions that a fiduciary relationship existed between Plaintiffs and Defendant Stavale, or how Defendant Stavale breached this duty. Plaintiffs' fiduciary duty claim will therefore be dismissed.

*4. TILA and CROA Claims*

The First Amended Complaint alleges that Defendants violated TILA by failing to provide unspecified disclosures. (First Am. Compl. ¶ 46.) Plaintiffs allege that Defendants violated the CROA by misrepresenting Plaintiffs' income on their loan application. (*Id.* ¶ 56.)

Defendants Ocwen, HSBC, and MERS were not involved in the origination of Plaintiffs' refinance loan, and are therefore not liable for omissions/misrepresentations in connection with the loan application for the reasons stated *supra*.

Defendant Stavale argues that Plaintiffs' TILA claim is barred by the statute of limitations. Regarding the CROA, Defendant Stavale argues that it is not subject to the CROA's provisions

because it is not a "credit repair organization." Plaintiffs do not address Defendant Stavale's arguments regarding the CROA in their response.

Congress provided that the purpose of the CROA was "to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services . . . ." 15 U.S.C. § 1679(b)(1). The CROA defines a "credit repair organization" as follows:

> any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of --
>
> > (i) improving a consumer's credit record, credit history, or credit rating; or
> >
> > (ii) providing advice or assistance to any consumer with regard to any activity or service described in cause (i) . . . .

15 U.S.C. § 1679a(3).

The First Amended Complaint alleges that Defendant Stavale was involved in brokering Plaintiffs' loan. (First Am. Compl. ¶ 11.) It does not allege that Defendant Stavale was employed for the purpose of improving Plaintiffs' credit record, history, or rating, or to provide advice on improving Plaintiffs' credit record, history, or rating. Accordingly, Plaintiffs have failed to allege a CROA claim against Defendant Stavale.

*5. MMBLSA*

Plaintiffs' claim under the MMBLSA is based on Defendants' alleged fraud/misrepresentation. (First Am. Compl. ¶ 62.) Because Plaintiffs have failed to state a claim of fraud, Plaintiffs' MMBLSA claim will also be dismissed. Furthermore, the First Amended

Complaint merely lists various provisions of the MMBLSA coupled with the legal conclusion that these provisions were violated by Defendants. Plaintiffs' MMBLSA claim thus fails for the additional reason that it lacks sufficient factual development pursuant to *Iqbal*, 556 U.S. at 677.

### C. Request to Amend

Plaintiffs seek leave to amend in lieu of dismissal of the First Amended Complaint. Federal Rule of Civil Procedure 15(a) provides a liberal standard for amendments to pleadings. However, "an amendment may not be allowed if the complaint as amended could not withstand a Fed. R. Civ. P. 12(b)(6) motion." *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1041 (6th Cir. 1991).

As discussed *supra*, all of Plaintiffs' claims are barred by the statute of limitations. Plaintiffs have failed to show any facts that, if alleged in an amended complaint, could overcome Defendants' statute of limitations defense. The Court further notes that Plaintiffs have had since October 2012, when Defendants Ocwen, HSBC, and MERS filed their motion to dismiss, to amend their First Amended Complaint, but have not done so. Plaintiffs also have not attached a proposed amended complaint to either of their responses in this matter, or otherwise indicated to the Court the facts they could allege to sustain a claim in light of Defendants' statute of limitations defense. Accordingly, Plaintiffs' request to amend is denied.

### IV. CONCLUSION

For the reasons stated above, the Court will **GRANT** Defendants' motions to dismiss.

SO ORDERED.

Dated: 4/30/2013
Detroit, Michigan

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE